UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

KEITH NELSON PERIQUE, SR.                    CIVIL ACTION

VERSUS                                       NUMBER: 05-2821

JO ANNE B. BARNHART,                         SECTION: "K"(5)
COMMISSIONER OF SOCIAL SECURITY
ADMINISTRATION

## REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. §636(b) and Local Rule 73.2E(B), this matter comes before the Court on the parties' cross-motions for summary judgment following a decision of the Commissioner of the Social Security Administration denying plaintiff's application for Disability Insurance Benefits ("DIB").  (Rec. docs. 11, 12).

Keith Nelson Perique, Sr., plaintiff herein, filed the subject application for DIB on February 9, 2004 alleging disability as of December 15, 2003. (Tr. pp. 80-82).  In a Disability Report that appears in the administrative record below, degenerative joint disease was identified as plaintiff's disabling condition. (Tr. p.

103).  That condition first began bothering plaintiff on October 1, 2000 and rendered him unable to work on December 15, 2003. (Tr. p. 104).

Plaintiff's application for DIB was denied at the first step of the Commissioner's administrative review process on May 13, 2004. (Tr. pp. 58-61).  Pursuant to plaintiff's request, a hearing de novo before an Administrative Law Judge ("ALJ") went forward on March 10, 2005 at which plaintiff, who was represented by counsel, and a Vocational Expert ("VE") appeared and testified.  (Tr. pp. 21-56). On April 11, 2005, the ALJ issued a written decision in which he concluded that plaintiff was not disabled within the meaning of the Social Security Act.  (Tr. pp. 11-20).  The Appeals Council ("AC") subsequently denied plaintiff's request for review of the ALJ's decision, thus making the ALJ's decision the final decision of the Commissioner. (Tr. pp. 6-8).  It is from that unfavorable decision that the plaintiff seeks judicial review pursuant to 42 U.S.C. §405(g).

In his cross-motion for summary judgment, plaintiff essentially argues that the ALJ erred in failing to credit plaintiff's hearing testimony pursuant to Social Security Ruling ("SSR") 96-7p and that the combination of his impairments renders him unable to perform any type of work. Relevant to a resolution of plaintiff's claims are the following findings made by the ALJ:

1.   [c]laimant met the disability insured status requirements
     of the Act on December 15, 2003, the date he stated he
     became unable to work, and continues to meet them through
     December 31, 2007.

2.   [c]laimant has not engaged in substantial gainful
     activity since the alleged onset date of December 15,
     2003.

3.   [t]he medical evidence establishes that claimant has
     degenerative joint disease of the shoulders and knees and
     post traumatic stress disorder, which are "severe"
     impairments, but that he does not have an impairment or
     combination of impairments that meets or equals any
     impairment listed in Appendix 1, Subpart P, Regulations
     No. 4.

4.   [c]laimant's complaints are not substantiated to the
     extent claimed and are considered credible under the
     criteria set forth in Social Security Ruling 96-7p and
     §404.1529 only to the extent that he suffers from no more
     than a mild to moderate amount of pain or other
     subjective symptoms that would not preclude all
     substantial gainful activity.

5.   [c]laimant has the residual functional capacity to lift
     a maximum of five pounds with his right upper extremity
     and ten pounds frequently and twenty pounds occasionally
     with his left upper extremity, sit for at least six
     hour[s] in an eight-hour day, stand one hour at a time,
     walk two blocks at a time, can alternate sitting,
     standing and walking at least six hours out of an eight
     hour day, no work performed above the shoulder with his
     right upper extremity, no climbing, and where the work is
     low stress in nature and can be performed with minimal
     exposure to the public.

6.   [s]uch residual functional capacity would not preclude
     performing claimant's past relevant work as switchboard
     operator or dispatcher.

7.   [i]n the alternative and assuming that claimant cannot
     perform his past work, he is forty-two years old.
     According to the regulations, this constitutes a "younger
     individual." He has a twelfth grade education.  Claimant
     has no transferrable work skills.

8.   [i]n the alternative and assuming that claimant cannot

> perform his past work, considering the aforementioned residual functional capacity and claimant's age, education and past relevant work experience, he can perform other work as [an] unarmed security guard, general office clerk, and hand packer. Such jobs exist in significant numbers in the region where claimant resides or in the national economy.

> (Tr. pp. 19-20).

Judicial review of the Commissioner's decision to deny DIB is limited under 42 U.S.C. §405(g) to two inquiries: (1) whether substantial evidence of record supports the Commissioner's decision, and (2) whether the decision comports with relevant legal standards. Anthony v. Sullivan, 954 F.2d 289, 292 (5th Cir. 1992); Villa v. Sullivan, 895 F.2d 1019, 1021 (5th Cir. 1990); Fraga v. Bowen, 810 F.2d 1296, 1302 (5th Cir. 1987). If the Commissioner's findings are supported by substantial evidence, they are conclusive and must be affirmed. 42 U.S.C. §405(g); Richardson v. Perales, 402 U.S. 389, 91 S.Ct. 1420 (1971). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the Commissioner's decision. Johnson v. Bowen, 864 F.2d 340, 343-44 (5th Cir. 1988). Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Jones v. Heckler, 702 F.2d 616, 620 (5th Cir. 1983). The Court may not reweigh the evidence or try the issues de novo, nor may it substitute its judgment for that of

4

the Commissioner.  <u>Cook v. Heckler</u>, 750 F.2d 391, 392 (5th Cir. 1985).  Conflicts in the evidence are for the Commissioner to resolve, not the courts.  <u>Patton v. Schweiker</u>, 697 F.2d 590, 592 (5th Cir. 1983).

A claimant seeking DIB bears the burden of proving that he is disabled within the meaning of the Social Security Act.  <u>Harrell v. Bowen</u>, 862 F.2d 471, 475 (5th Cir. 1988).  Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which...has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A).  Once the claimant carries his initial burden, the Commissioner then bears the burden of establishing that the claimant is capable of performing substantial gainful activity and is, therefore, not disabled.  <u>Harrell</u>, 862 F.2d at 475.  In making this determination, the Commissioner utilizes the five-step sequential analysis set forth in 20 C.F.R. §404.1520, as follows:

> 1.   an individual who is working and engaging in substantial gainful activity will not be found disabled regardless of the medical findings.
>
> 2.   an individual who does not have a "severe impairment" will not be found to be disabled.
>
> 3.   an individual who meets or equals a listed impairment in Appendix 1 of the Regulations will be considered disabled without consideration of vocational factors.

4.   if an individual is capable of performing the work that he has done in the past, a finding of "not disabled" must be made.

5.   if an individual's impairment precludes him from performing his past work, other factors, including age, education, past work experience, and residual functional capacity, must be considered to determine if other work can be performed.

On the first four steps of the analysis, the claimant bears the initial burden of proving that he is disabled and must ultimately demonstrate that he is unable to perform the work that he has done in the past. Bowen v. Yuckert, 482 U.S. 137, 146 n.5, 107 S.Ct. 2287, 2294 n.5 (1987). In determining whether a claimant is capable of performing the work that he has done in the past, the ALJ is required to assess the demands of the prior work and to compare those demands to the claimant's present capabilities. Villa, 895 F.2d at 1022; Hollis v. Bowen, 837 F.2d 1378, 1386 (5th Cir. 1988); Epps v. Harris, 624 F.2d 1267, 1274 (5th Cir. 1980). If the analysis reaches the fifth step, the ALJ may establish that other work is available that the claimant can perform by relying on expert vocational testimony or other similar evidence to establish that such jobs exist. Fraga, 810 F.2d at 1304 (citing Lawler v. Heckler, 761 F.2d 195, 198 (5th Cir. 1985)). Once the Commissioner demonstrates that the individual can perform other work, the burden then shifts back to the claimant to rebut that finding. Mays v. Bowen, 837 F.2d 1362, 1364 (5th Cir. 1988); Fraga, 810 F.2d at 1302.

At the time of the administrative hearing that was held on March 10, 2005, plaintiff was forty-two years of age, possessed a high school education, and had past relevant work experience as a production worker, a merchandiser, and a landscaper laborer/supervisor. Plaintiff had also served in the National Guard in active duty or reserve status for a number of years during which he was trained and worked in the fields of water purification, communications, and nuclear/biological/chemical warfare.

Upon being questioned by his attorney, plaintiff testified to previously sleeping only two to three hours per night which had improved since he had been prescribed various psychiatric medications one week earlier. Plaintiff continued to experience nightmares and daydreams about his military service in Iraq. From a physical standpoint, plaintiff had problems with reaching overhead, particularly on the right, and he relied upon his wife to assist him in washing his back and hair. He no longer did yard work and now hired others to do the odd jobs around the house that he had once done. Plaintiff estimated that he could lift five pounds with his right arm and fifteen to twenty pounds with his left arm. He also had difficulty with standing more than one hour or walking more than two blocks due to knee pain and he could only climb four steps. Sitting ability was unaffected. Plaintiff experienced pain when laying on his right side due to shoulder pain

and he had memory difficulties "sometimes". For enjoyment, plaintiff raised finches but he no longer raced pigeons competively as he once had because he preferred to avoid people, particularly large crowds like those that attended Mardi Gras. Plaintiff did not feel that he was capable of working at a pet store due to the weight of fish tanks he might be required to lift.

As for daily activities, plaintiff drove his youngest child to daycare, attended scheduled doctors' appointments, went to the bank and performed light housekeeping chores such as washing the dishes and doing limited laundry. He watched TV with his family and occasionally went to sporting events and he dined out and went to plays with his wife. Plaintiff's treatment for his knee pain consisted of only oral medications as his doctors at the VA Hospital questioned whether his knee difficulties were service-related. He also took Trazodone, Wellbutrin, and a third medication for sleep and PTSD-related difficulties. (Tr. pp. 24-47).

Cindy Harris, a VE, was next to take the stand. She first classified the exertional and skill demands of plaintiff's prior jobs as a production worker, merchandiser, and landscaper as well as those of the civilian counterparts to the jobs he had performed in the military. The ALJ then posed a hypothetical question to Harris which assumed an individual who was capable of lifting five pounds on the right; of lifting ten pounds frequently and twenty

8

pounds occasionally on the left; of sitting six hours per eight-
hour workday; of walking two blocks at a time with alternating
sitting/standing/walking of up to six hours per eight-hour workday;
no work above shoulder level on the right; little, if any,
climbing; and, of performing a low-stress job with minimal personal
contact with the public. Presented with that hypothetical, the VE
testified that the described individual could perform plaintiff's
past work as a switchboard operator or dispatcher. Alternatively,
in light of plaintiff's age, education, military training and work
experience, and the limitations he had testified to at the
administrative hearing, the VE indicated that plaintiff could also
function as an unarmed security guard, a general office clerk, or
a hand packer, with significant numbers of such jobs existing in
the national and state economies. Upon further questioning by the
ALJ, plaintiff testified that the treatment he had been receiving
for his right shoulder at the VA Hospital had largely been
ineffectual because that Agency disputed whether the condition was
service-related.

The VE was then tendered to plaintiff's attorney for cross-
examination.  Although counsel initially intended to delve into
plaintiff's ability to work in light of limitations from alleged
medication side effects, she withdrew that question after the ALJ
pointed out that the evidence contained no support for any side
effects other than drowsiness resulting from sleep aids plaintiff

took at night.  (Tr. pp. 47-56).

As noted earlier, plaintiff's first challenge to the Commissioner's decision is that the ALJ erred in failing to credit plaintiff's testimony regarding his mental and physical limitations in violation of SSR 96-7p.  On that score, the Court notes that the responsibility of weighing the evidence and determining the credibility of witnesses' testimony and doctors' opinions lies with the ALJ in the first instance.  Carrier v. Sullivan, 944 F.2d 243, 247 (5th Cir. 1991); Griego v. Sullivan, 940 F.2d 942, 945 (5th Cir. 1991); Wren v. Sullivan, 925 F.2d 123, 129 (5th Cir. 1991); Moore v. Sullivan, 919 F.2d 901, 905 (5th Cir. 1990).  In addition, the law is clear that the burden is upon the plaintiff to produce objective medical evidence of a condition that could reasonably be expected to produce the level of pain or other symptoms complained of.  Selders v. Sullivan, 914 F.2d 614, 618 (5th Cir. 1990); Harper v. Sullivan, 887 F.2d 92, 96 (5th Cir. 1989).  The ALJ must then weigh the plaintiff's testimony and subjective complaints against the objective medical evidence that has been produced.  Chaparro v. Bowen, 815 F.2d 1008, 1010 (5th Cir. 1987)(citing Jones, 702 F.2d at 621 n.4).  The evaluation of a plaintiff's subjective symptoms is a task particularly within the province of the ALJ for it was the ALJ who had an opportunity to observe the plaintiff, not the Court.  Harrell, 862 F.2d at 480.  The ALJ may discredit a plaintiff's subjective complaints of pain and other limitations if

10

he carefully weighs the objective medical evidence and articulates his reasons for doing so. Anderson v. Sullivan, 887 F.2d 630, 633 (5th Cir. 1989)(citing Abshire v. Bowen, 848 F.2d 638, 642 (5th Cir. 1988)).

A review of the ALJ's written decision reveals that he properly weighed plaintiff's hearing testimony and subjective complaints against the objective evidence of record in arriving at plaintiff's residual functional capacity ("RFC") to work and in determining plaintiff's disability status. The ALJ began his decision by summarizing the testimony adduced at the administrative hearing held on March 10, 2005. (Tr. p. 15). He then turned to a discussion of the medical records of plaintiff's treatment at East Jefferson General Hospital, Lakeside Hospital, the Medical Center of Louisiana at New Orleans, the New Orleans Health Care Center, the Veterans Administration Medical Center of New Orleans, by Dr. Camalyn Gaines, and the records that were generated while plaintiff was in military service. (Tr. pp. 15–17). The ALJ then proceeded to perform the five-step sequential evaluation required by §404.1520 of the Code of Federal Regulations, finding that plaintiff's impairments, although severe, did not meet or functionally equal the criteria of any condition set forth in the Listing of Impairments. (Tr. p. 17).

Proceeding through step three of the §404.1520 analysis the ALJ then made an assessment of plaintiff's RFC based, to some

extent, on the objective findings of Dr. Gaines but in large part on plaintiff's own hearing testimony that he could lift a maximum of five pounds with his right upper extremity, lift up to twenty pounds with his left upper extremity, sit for at least six hours per eight-hour workday, stand one hour at a time, and walk two blocks at a time with no climbing, no work above shoulder level on the right, and work that was low stress in nature and could be performed with minimal exposure to the public. (Tr. pp. 17-18). Among the various factors that were considered by the ALJ were the relatively normal activities that plaintiff either testified to or reported to the Commissioner in the administrative proceedings below.[1]/  Those activities included driving his youngest child to daycare, attending doctors' appointments, going to the bank, performing light household chores, raising finches, and occasionally going to sporting events, dining out, or seeing a play with his wife.  Plaintiff's ability to perform such activities is not indicative of someone who can perform no work whatsoever and the ALJ may properly consider plaintiff's capabilities in that regard in determining his disability status. Leggett v. Chater, 67 F.3d 558, 565 n.12 (5th Cir. 1995).

Moreover, a review of the administrative hearing transcript reveals that the ALJ incorporated the very limitations that plaintiff had testified to in his hypothetical questions to the VE.

----

[1]/ The ALJ even cited specifically to SSR 96-7p. (Tr. p. 18).

(Tr. pp. 49-50).  In answer to those questions, the VE testified that the described individual could perform plaintiff's past work as a switchboard operator or dispatcher.  (Tr. pp. 50-51). Alternatively, the VE testified that plaintiff could also function as an unarmed security guard, a general office clerk, or a hand packer. (Tr. pp. 51-52).  Contrary to plaintiff's assertion, the ALJ properly credited plaintiff's subjective complaints.

Plaintiff's second challenge to the Commissioner's decision is that the combination of his impairments renders him unable to perform any work whatsoever.  Here, again, the Court disagrees.  In the "Activities of Daily Living Form" that appears in the administrative record below, plaintiff reported that he prepared simple meals daily, performed light household chores, drove and went out of the house alone, shopped in person, by phone, or through the mail, frequently used a computer, and socialized with others.  Plaintiff had not experienced any problems getting along with family, friends, neighbors, or co-workers and he had no problems paying attention, finishing what he had started, following instructions, or getting along with authority figures.  (Tr. pp. 127-134).  Reports such as these may properly be considered by the ALJ in determining a claimant's disability status.  Vaughan v. Shalala, 58 F.3d 129, 131 (5th Cir. 1995); Villa, 895 F.2d at 1022-23.

The Court also notes that degenerative joint disease was the

sole condition identified as disabling in the Disability Report pertaining to plaintiff's application for DIB.   See Pierre v. Sullivan, 884 F.2d 799, 802 (5th Cir. 1989).  No mention was made of any other conditions causing non-exertional limitations.  In that regard, plaintiff testified at the administrative hearing that he had recently begun a new medication regimen to counter any PTSD-related symptoms which seemed to be working.  As discussed above, the exertional limitations that plaintiff testified to at the administrative hearing were the very limitations that the ALJ incorporated into his questions to the VE. Plaintiff's non-exertional limitations were adequately accounted for as the ALJ included in his hypothetical questions to the VE the rquiremetns that the work be low-stress and with minimal contact with the public.  The VE's answers to those questions constitute substantial evidence supporting the ALJ's decision which has not been rebutted here.

## **RECOMMENDATION**

For the foregoing reasons, it is recommended that plaintiff's motion for summary judgment be denied and that defendant's motion for summary judgment be granted.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in a magistrate judge's report and recommendation within 10 days after being served with a copy shall bar that party, except upon grounds of plain

error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  Douglass v. United Services Auto. Assoc., 79 F.3d 1415 (5th Cir. 1996)(en banc).

New Orleans, Louisiana, this  19th  day of ____October____,
2006.

_____
UNITED STATES MAGISTRATE JUDGE

15